Next case for argument is 18-1014 Advanced Media Networks v. AT&T Mobility So that's an established technical understanding of Ethernet, and we accept that. Now we have to figure out what do you mean by Ethernet packet switching protocol, and we have to figure out whether you said something so clearly enough in your specification that displaces and dislodges the well-established meaning of Ethernet. And so now I'm wondering, when you say what you say about Ethernet packet switching protocol and using TCPIP or 802.10, why can't that mean, or why shouldn't the most logical understanding of this be, you can use IEEE 802.10 and or TCPIP in conjunction with the Ethernet standards at the data link layer, that is, 802.3 and 802.11? Well, as I just mentioned earlier, those standards wouldn't work on the redundant microwave communication system. That would be one reason. Number two, it's specifically identified as an example. And number three, an example of an Ethernet packet switching protocol is TCPIP. Let me try again. TCPIP can be used with 802.3 and 802.11. Is that right? They're compatible with each other? There's not something incompatible with them? Certainly not. IP is the dominant packet switching protocol throughout the Internet. And then same thing with the security functions of 802.10. Those can be used with 802.3 and 802.11, right? Right. But to define Ethernet packet switching protocol as limited to two standards that are not even mentioned and exclude TCPIP, I believe, is error. I'm not trying to exclude TCPIP. I think I'm saying those are classic layers three and four protocols that you would use with Ethernet at layer two. Maybe the claim term, configure to transfer information between will give us some insight. The court said there had to be one common protocol on each side. The mobile hub station uses, it transfers information using an Ethernet packet switching protocol. That means to a person skilled in the art, it's performing a routing function. Routing is a network layer three function. You can't, 802 specs are point to point. They're about getting zeros and ones accurately between point A and point B. It's not routing packets. IP is the packet switching protocol that enables us to send a message to the other side of the world. 802 will just get it to the next box. I believe I'm running short on time. I'd like to save some time for rebuttal. Thank you. Good morning and may it please the court. It is absolutely correct that Ethernet had a clear ordinary meaning to a person of ordinary skill in the art in 1996. But don't we know, isn't it a well-established rule that the patentee can be its own lexicographer? And aren't there several instances in the specification where it's indicated that TCP slash IP is within Ethernet packet switching protocol? It says such as, for example. There are several instances. And then you have claim three, which is dependent, wherein the information is transferred using the TCP IP protocol. Doesn't that dominate any other so-called well-established meaning? It does not in this case, Your Honor. Certainly to your first question, it is correct that the patentee may be his or her own lexicographer. But that is a very high bar to meet. It is, as this court has described in the Thorner decision in our briefs, an exacting standard. It must clearly express an intent to redefine. And there's an important policy behind that as well. Because if you have a situation, such as your question would posit here, where you have a word with such a clear understood meaning to a person of ordinary skill as Ethernet had in 1996, if the patentee wished to define that differently, such that rather than operating at level layer two, as Judge Chen observed, it operates instead with different protocols articulated by a different standards body at different layers, then that has to be very clearly expressed indeed. Isn't that very clear when it says such as, and for example, and then it does the same thing in other parts of the specification several times? It is not clear. It is perhaps inartfully drafted there, but it is not clear that there is a limitation of Ethernet to be a situation where, in AMN's view, it would be IP without Ethernet. And that's exactly, everyone understood you could use IP with Ethernet, and that's exactly what those examples in figure two would be understood as being, because a person of ordinary skill in the art would know that IP is not Ethernet, but it could be commonly used as the higher layer protocols encapsulated in an Ethernet layer at layer two. And further, the intrinsic record is also not so one-sided. There is, for example, comments, as we pointed out in our brief, at column three, lines 24 through 26, which talk about using Ethernet in wireless LANs, which are the issues to which 802 standards are directed. TCP IP, on the other hand, is not restricted to use in LANs. Further, claim three reinforces the view that a person of ordinary skill in the art would have, because in claim one, all that's required is an Ethernet standard, an Ethernet protocol, which operates at layer two. But claim three further says, well, you've also got to use TCP IP with your Ethernet protocol at the higher layers. And so there's a consistent view that one of ordinary skill in the art would have. And then when we get to the prosecution history, even without getting into the issue of disclaimer, there are multiple statements throughout the reexaminations in which the patentee said that, yes, in fact, by Ethernet packet switching protocol, what I mean is what's classically understood as being Ethernet. And, for example, there were statements about a hidden terminal problem that Ethernet had, but that TCP IP did not have. And AMN made it very clear to the patent examiner that this problem only exists for Ethernet. Well, if it doesn't exist for TCP IP, then TCP IP can't be within the scope of Ethernet. Likewise, AMN repeatedly said when confronted with prior art showing TCP IP being used over different layer two protocols, like ATM, HDLC, and T1 as only a few examples, AMN repeatedly said, no, no, no, that's not an Ethernet packet switching protocol. And so those statements in the intrinsic record, before we even get to the issue of whether they're disclaimer, which they are for the reasons we pointed out in our briefing, they also illustrate in the intrinsic record that a person who already has a skill in the art would not see this as the clearly expressed intent to redefine a term to meet the exacting lexicography standard. In fact, the patentee here does not even argue lexicography in its briefs. It didn't do it here. It didn't do it below before the district court. So lexicography has not been an issue. Well, but you understand what his argument is. His argument is slightly different. And it's that we don't have to take the definition or the well understood meaning of Ethernet because what we've got here is a whole plain term. So it might have a slightly modified meaning in the context of the other words used. Yes, but that's essentially, as they admit on page one of their opening brief, this appeal boils down to what does Ethernet mean. That's how they let off their brief, and that's absolutely correct. Nobody's disputing what a packet switching protocol is. And the word Ethernet is simply a modifier that further narrows it. There are many packet switching protocols in the art. Ethernet is one very specific type of packet switching protocol. Is it a packet switching protocol, Ethernet? Yes, absolutely it is. I guess that's what I'm trying to understand. When I think of packet switching protocol, I think of things like TCP IP. Whereas Ethernet, which is going on at the data link layer, I don't necessarily think of as a packet switching protocol. So that's why I'm a little confused. I could understand perhaps an interpretation of Ethernet packet switching protocol as meaning a packet switching protocol that's running on the Layer 2 Ethernet standard. And then that would include TCP IP. But I'm not so sure I understand that what is going on at the data link layer, Layer 2, with Ethernet itself is a packet switching protocol. Could you explain that? Do you see what I'm thinking and how that seems to have some daylight between what you're thinking? I see the distinction, certainly, that you're making at that level, Your Honor. However, if we look at both the intrinsic record and AMN's own statements below, that's not how they've ever characterized it. First of all, the intrinsic record throughout the prosecution of the re-exams, AMN distinguished prior art that used a different Layer 2 protocol than Ethernet by saying that's not an Ethernet packet switching protocol. They didn't just say that's not Ethernet. They used the full claim term, that's not Ethernet packet switching protocol. And furthermore, in the district court, they made the same argument. At Appendix 426, for example, I'll quote from AMN's opening claim construction brief. It says, AMN agrees with the PTAB and does not dispute that the 802 standards are included within the scope of the term Ethernet packet switching protocol. The 802 standards, of course, everyone would agree are Ethernet protocols. So AMN has never taken that fine of a distinction between what a packet switching protocol is at different layers. Okay, so is it your understanding that Ethernet packet switching protocol is something we're referring to what's going on at Layer 2? Yes, so that is a term used in this patent and throughout the intrinsic record to define what's being referred. So then it doesn't exclude the possibility of running TCP IP on Layers 3 and 4? Absolutely not. So then why did the district court say Ethernet packet switching protocol excludes IP? What it excludes is IP running over a Layer 2 protocol other than Ethernet. And that's what AMN's infringement contention is in this case. The issue here with AT&T is that on the cellular network, IP packets are used over the 3GPP protocol for 3G and 4G LTE networks. That is not Ethernet. So there is a different Layer 2 protocol being used in the alleged infringing devices and the allegedly infringing network. And so that's the issue is AMN wants to construe Ethernet packet switching protocol to mean using IP but not using Ethernet at Layer 2, rather using some different Layer 2 standard. And that's where the inconsistency comes with the prosecution history. During the re-exams, every time it was confronted with a Layer 2 protocol, such as ATM, which is another packet switching protocol, it said no, no, that's not an Ethernet packet switching protocol. So the district court's construction does not eliminate the use of TCP IP from the claim. To the contrary, so long as TCP IP is used with Ethernet, it could infringe Claim 1 or Claim 3 of the patent. And so that's where the distinction is. It's really they're trying, in our view, they're trying to rewrite the word Ethernet out of the patent, out of the claim, by saying, okay, you can use IP, but you use a different Layer 2 that's not Ethernet, and lo and behold, you still have an Ethernet packet switching protocol. And that would do violence to the claim language, in our view. You mentioned the 802, but you're aware, I'm sure, that the district court went farther and did something a little different to your claim construction with regard to 802.10. Does that have any consequence that you're aware of, either in the infringement contentions in this case or in any of the other pending cases? I don't know if you have any involvement in that. Does it matter? I mean, do we reach that? Does it matter in this case or anywhere else? I don't believe it does, Your Honor, because what the district court did here was be even a little bit more precise than the GOGO court. The district court is correct that the applicable Ethernet standards are 802.3 for wired Ethernet and 802.11, which was in draft close to final form at the time, for wireless Ethernet. And that's another reason, frankly, that the specifications mentioned of 802.10 is consistent with the view that these are other standards that could be used with Ethernet but are not themselves Ethernet. 802.10, as Your Honor recognizes, is a security protocol that can be used with Ethernet, 802.3 or 802.11 or other chapters of 802, but in itself is not Ethernet. So it is merely another, it's a security protocol that spans a couple of different layers that can be used along with what is Ethernet. But it's not correct for AMN to argue that Ethernet can be simply read out of this patent and instead the claim should apply to higher-level protocols that aren't Ethernet and that are used over lower-level protocols that themselves also aren't Ethernet. I guess your opposing counsel today was talking about how wireless WANs or WANs can't be used with Ethernet, so therefore it doesn't make sense to read it the way you and the district court want to read it. Yes, that was their argument. But again, there's no evidence of that. That's an argument they made here on appeal. There's no evidence in the record to support that notion that they can't be used with WANs because that was not a contention that they made and developed below. And furthermore, as this Court's authority on claim drafting holds, even if that were the case, they drafted the claim to recite Ethernet to say that you've got to use it on a WAN or a LAN, however you pronounce that. So that's up to them to draft the correct claims to cover the full scope of the invention. But there's simply no evidence in the record that it couldn't work because that wasn't a point that was probed below. It was only brought up here and fleshed out on appeal. In fact, as AMN admitted, 802 standards are Ethernet packet-switching protocols, and so they fully were within the scope of what they contemplated within that claim term. Would it make a difference whether the claim construction for Ethernet packet-switching protocol was what the district court said, which was a packet-switching protocol defined by 802.3 and draft 802.11 versus a packet-switching protocol that uses 802.3 or draft 802.11, or a packet-switching protocol that relies on or is carried on 802.3 and 802.11? I don't think that last one would be correct because that would talk about a different protocol at a different layer, perhaps. And I think at its heart, the construction, whatever the words used, needs to capture the fact that this Ethernet packet-switching protocol must itself be Ethernet, not merely that it's describing some higher-layer protocol that perhaps theoretically could be carried on Ethernet but need not be because it could also be carried on a different layer to protocol. That's what AMN is trying to read the term as, to capture IP without Ethernet. But the alternative construction I'm coming up with, it necessarily requires the usage of 802.3 or draft 802.11 operating on Layer 2 in order to do whatever packet-switching protocol you would be using at Layer 3. Right. I think so long as those are required, so long as you're requiring 802.3 or 802.11 as a Layer 2 protocol, then the specific wording perhaps is not as important, whether we use the word defined or we use a different term such as used. But at its bottom, it must use the 802, one of those 802 protocols that it would be considered and known by the person of ordinary skill and the art in 1996 to be Ethernet. Do you agree that the wireless LAN claim construction issue is not an issue on this appeal? If we were to affirm the claim construction on Ethernet packet-switching protocol? I do, Your Honor. Yes, absolutely. Unless there are any other questions, the last thing I want to do is just point to two decisions in our brief, and this is at page 31 of our response brief, the Ankara versus Apple decision and the Bayer Agro versus Dow Agro decision. Those are both cases where this court found that the patentee had not expressly redefined the claim term and talk about the public notice of policy behind requiring a clear redefinition in the case where, as it was the case there and is the case here, a technical term, a scientific term is so well-established in the art that we've got to have something very clear to redefine it to mean something differently. An AMN should not be permitted to redefine it here because the patent does not clearly do so. Unless there are other questions, thank you very much, Your Honor. My time is short, but I'll cover the highlights here. The distinction in the file history that was being made in the later prosecution history, 12 years after the patent issued, was the difference between circuit-switch, a circuit-switch technology like T1 or ATM versus packet-switching. That was the distinction that was being made. That, in fact, as we have explained in the Finner patent that's on the face, packet-switching and circuit-switching were two different technologies. The world was emerging from circuit-switch to going toward packet-switch, which is what dominates today. My colleague here has, I believe, taken too harsh of a view of lexicography. The more modern statement of claim construction, spinning off as Phillips or following up on Phillips, is the Trustees case that we cite, where it's all about context. You can define a term by implication. The only thing that matters is how a word is used in the specification. Here, I submit to you that Ethernet packet-switching protocol was consistently defined, or at least given as an example. The TCPIP was given as an example of an Ethernet packet-switching protocol. Yes, we conceded below that 802.10 had to also be included because it's also given as an example. The district court's construction reads out both examples given. Is 802.10 a packet-switching protocol? As we showed in our reply brief, if you look at the diagram out of 802.10, it extends right here, page 16. You'll see in this picture that it extends above layers 1 and 2 and goes into layer 3. That is because 802.10 utilized layer 3 to manage the lower layers in this security function. It's a security protocol, but is that a packet-switching protocol? There's a dependent claim that it's directed at a secure intranet. I would speculate that that's what the writer had in mind when he threw that in. Regardless of whether 802.10 is in or out, I submit to you that Ethernet has to be construed as an adjective, as a modifier. Packet-switching protocol is the universe that we have to start with, and there were a number of them. In 802.3, our Dix Ethernet, there was an Ether type. You had multiple packet-switching protocols that had Ether types that were suitable for use on Dix Ethernet, which was the first Ethernet. Ethernet actually means Dix Ethernet, not 802.3 as of 1996. When I say that Ethernet packet-switching protocol, what I say it means is it's a packet-switching protocol. IP would be the first one that would pop into somebody's mind after reading this. Then ask, well, what did it mean by Ethernet? I'd think, oh, it's one that would be suitable for use on communicating over a shared medium, an Ethernet, such as one of these that had an Ether type. Then claim 3 wraps it all up. Claim 3 narrows claim 1 by specifically requiring that the packet-switching protocol be TCPIP, as opposed to one of the others. Does it say it like that? It doesn't quite say it like that. I think the word information would have been a lot more helpful if it had said... It would have been a lot more helpful, yeah. But, information looking at the antecedent basis above, it's the information being transferred by the mobile switching unit, mobile hub station, that utilizing, using an Ethernet packet-switching protocol. So, I hope that answered your questions. I believe I'm out of time. Thank you.